NMA:EAG/AL
F. #2014R00128

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 09 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

LUCA DIMATTEO,
LUKEY DIMATTEO and
JOHN SHIELDS,
    also known as "Scott Greco,"

                  Defendants.

- - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **CR 15 - 334**
(T. 18, U.S.C., §§ 894(a)(1), 981(a)(1)(C),
1084(a), 1951(a), 1952(a)(2)(A), 1955(a),
1962(d), 1963(a), 1963(m), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

**GLASSER, J.**

**POLLAK, M.J.**

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### The Enterprise

1.     The members and associates of the Colombo organized crime family of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Colombo crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo crime family engaged in, and its activities affected, interstate

and foreign commerce. The Colombo crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Colombo crime family had a hierarchy and structure. The head of the Colombo crime family was known as the "boss." The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Colombo crime family served in an "acting" rather than "official" capacity in

the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Colombo crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7. Many requirements existed before an associate could become a member of the Colombo crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa

Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8. The principal purpose of the Colombo crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Colombo crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking. The members and associates of the Colombo crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

5

10. The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of the crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

12. At various times relevant to this Indictment, the defendant LUCA DIMATTEO was an acting captain and soldier within the Colombo crime family.

13. At various times relevant to this Indictment, the defendant LUKEY DIMATTEO was an associate within the Colombo crime family.

### COUNT ONE
(Racketeering Conspiracy)

14. The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, being persons employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c),

5

10. The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of the crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

12. At various times relevant to this Indictment, the defendant LUCA DIMATTEO was an acting captain and soldier within the Colombo crime family.

13. At various times relevant to this Indictment, the defendant LUKEY DIMATTEO was an associate within the Colombo crime family.

### COUNT ONE
(Racketeering Conspiracy)

14. The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, being persons employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c),

6

that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## RACKETEERING ACT ONE
(Extortion/Extortion Conspiracy – John Doe #1)

16. The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A. Federal Extortion Conspiracy

17. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: the property of a commercial business, from John Doe #1, an individual whose identity is known to the Grand Jury, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B. Federal Extortion

18. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: the property of a commercial business, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.  State Law Extortion Conspiracy

19. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: the property of a commercial business, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

D.  State Law Extortion

20. In or about and between January 2009 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: the property of a commercial business, by compelling and inducing

Case 1:15-cr-00334-ILG Document 1 Filed 07/09/15 Page 8 of 20 PageID #: 8

8

John Doe #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT TWO
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit – John Doe #2)

21. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Two:

A. Extortionate Collection of Credit Conspiracy

22. In or about and between October 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUCA DIMATTEO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #2, an individual whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Section 894(a)(1).

B. Extortionate Collection of Credit

23. In or about and between October 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUCA DIMATTEO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #2, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

C.     State Law Extortion

24.    In or about and between October 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LUCA DIMATTEO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: U.S. currency, by compelling and inducing John Doe #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT THREE
(Illegal Gambling – Joker-Poker Machines)

25.    In or about and between November 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving joker-poker machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

10

## RACKETEERING ACT FOUR
(Illegal Gambling – Sports Betting)

26. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Four:

A. Transmission of Wagering Information

27. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, being engaged in the business of betting and wagering, did knowingly and intentionally use one or more wire communication facilities for the transmission in interstate commerce of information assisting in the placing of bets and wagers on one or more sporting events and contests, in violation of Title 18, United States Code, Sections 1084(a) and 2.

B. Use of Interstate Facilities in-aid-of Racketeering

28. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally travel in interstate commerce, and use the mail and one or more facilities in interstate commerce, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: an illegal gambling business, in violation of New York Penal Law Section 225.05, and thereafter did perform and attempt to perform such promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(2)(A) and 2.

11

## RACKETEERING ACT FIVE
(Extortion/Extortion Conspiracy – John Doe #3)

29. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Five:

A. <u>State Law Extortion Conspiracy</u>

30. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: U.S. currency, by compelling and inducing John Doe #3, whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B. <u>State Law Extortion</u>

31. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: the property of a commercial business, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

12

## RACKETEERING ACT SIX
(Extortionate Collection of Credit – John Doe #4)

32. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Six:

A. Extortionate Collection of Credit Conspiracy

33. In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #4, an individual whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Sections 894(a)(1).

B. Extortionate Collection of Credit

34. In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #4, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

C. State Law Extortion Conspiracy

35. In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain

property, to wit: U.S. currency, by compelling and inducing John Doe #4 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

    D.    State Law Extortion

    36.    In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: U.S. currency, by compelling and inducing John Doe #4 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

(Title 18, United States Code, Sections 1962(d) and 3551 et seq.)

COUNT TWO
(Hobbs Act Extortion Conspiracy – John Doe #1)

    37.    In or about and between January 2009 and July 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and

14

others agreed to obtain property, to wit: the property of a commercial business, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT THREE
(Hobbs Act Extortion – John Doe #1)

38. In or about and between January 2009 and July 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUCA DIMATTEO and LUKEY DIMATTEO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: the property of a commercial business, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FOUR
(Extortionate Collection of Credit Conspiracy – John Doe #2)

39. In or about and between October 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUCA DIMATTEO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #2.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

15

## COUNT FIVE
(Extortionate Collection of Credit – John Doe #2)

40. In or about and between October 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUCA DIMATTEO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #2.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT SIX
(Illegal Gambling – Joker-Poker Machines)

41. In or about and between November 2014 and January 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendants LUKEY DIMATTEO and JOHN SHIELDS, also known as "Scott Greco," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving joker-poker machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

16

## COUNT SEVEN
(Transmission of Wagering Information)

42. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, being engaged in the business of betting and wagering, did knowingly and intentionally use one or more wire communication facilities for the transmission in interstate commerce of information assisting in the placing of bets and wagers on one or more sporting events and contests.

(Title 18, United States Code, Sections 1084(a), 2 and 3551 et seq.)

## COUNT EIGHT
(Use of Interstate Facilities in-aid-of Racketeering)

43. In or about January 2015, within the Eastern District of New York and elsewhere, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally travel in interstate commerce, and use the mail and one or more facilities in interstate commerce, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: an illegal gambling business, in violation of New York Penal Law Section 225.05, and thereafter did perform and attempt to perform such promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(2)(A), 2 and 3551 et seq.)

## COUNT NINE
(Extortionate Collection of Credit Conspiracy – John Doe #4)

44. In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT TEN
(Extortionate Collection of Credit – John Doe #4)

45. In or about and between May 2014 and March 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LUKEY DIMATTEO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

46. The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offense to forfeit: (a) any interest acquired or maintained in violation of such offense; (b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted or participated in the conduct of, in violation of such offense;

and (c) any property constituting, or derived from, any proceeds which the defendants obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of such offense.

47. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH TEN

48. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Two through Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds

traceable to such offenses.

      49.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

*Robert Heffern*

FOREPERSON

*Kelly T. C*

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2014R00128
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN District of NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

LUCA DIMATTEO, ET AL.,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 894(a)(1), 981(a)(1)(C), 1084(a), 1951(a), 1952(a)(2)(A), 1955(a), 1962(d), 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C. § 853(p); T. 28, U.S.C. § 2461(c))

*A true bill.*

_Robert Heffernan_____
Foreperson

Filed in open court this __9th__ day,
of __July__ A.D. 20 _15_

_____
Clerk

Bail, $ _____

*Elizabeth Geddes, Assistant U.S. Attorney (718) 254-6430*